**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Richard Mustonen (Y-32625), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22 C 0179 |
| | ) | |
| Donte Thomas, | ) | Judge John J. Tharp Jr. |
| | ) | |
| Defendant. | **)** | |

**MEMORANDUM OPINION AND ORDER**

Richard Mustonen, a prisoner in the Illinois Department of Corrections ("IDOC"), filed this action *pro se* under 42 U.S.C. § 1983 against Defendant Donte Thomas, a corrections officer. He alleges that Thomas beat him in his cell, tried to shove his head in the toilet before being ordered by a Sergeant to stop, and afterward threatened to deny Mustonen food and phone access. The day of the incident, Mustonen filed an emergency grievance, in response to which an Assistant Warden deemed the situation an emergency and, among other things, commenced an internal affairs investigation. After two months had passed, the prison issued a formal response to Mustonen's grievance calling it "moot" and claiming they had addressed the issue. Without appealing that mootness finding, Mustonen then filed this action. Before the court is Thomas' motion for summary judgment, in which he argues that Mustonen failed to exhaust administrative remedies because he did not appeal. For the reasons discussed below, the Court denies Thomas' motion.

**BACKGROUND**

**I.     Deficiencies in Mustonen's Opposition to Summary Judgment**

Before recounting this case's background, the court must address two deficiencies in Plaintiff's filings, one procedural, the other substantive.

The Northern District of Illinois' Local Rules require a movant for summary judgment to submit both a memorandum of law and a statement of material facts—also called a "Rule 56.1" statement. L.R. 56.1(a). The Rule 56.1 statement must list "concise numbered paragraphs" supporting the summary judgment motion, with each listed fact supported by a citation to "specific evidentiary material" in the

record. L.R. 56.1(d)(1)-(2). In turn, the opposing party must file a response to the movant's statement of material facts, either admitting or disputing, paragraph by paragraph, each factual assertion the movant has made. L.R. 56.1(b)(2), (e)(1). When disputing a fact, the response must bear citation to admissible evidence. L.R. 56.1(e)(3). And in addition, the opposing party may file a separate statement of additional facts. L.R. 56.1(b)(3). Because this procedure is complicated, a represented party moving for summary judgment must provide a *pro se* opponent with a "Local Rule 56.2 Notice to Pro Se Litigant" form, which explains the process and how to respond. *See* L.R. 56.2.

"[A] district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Accordingly, when the plaintiff fails to respond to a defendant's Rule 56.1 Statement, the court treats the Statement's factual assertions as undisputed. *See Sebesta v. Davis*, 878 F.3d 226, 231 (7th Cir. 2017). And though courts "ordinarily afford[] *pro se* plaintiffs significant leeway in responding to summary judgment filings," *Boykin v. Dart*, No. 12 C 04447, 2014 WL 5611466, at *6 (N.D. Ill. Nov. 4, 2014), *pro se* litigants are not excused from compliance with the Rule, *Morris v. Nelson*, No. 17-CV-05940, 2020 WL 1330382, at *1 (N.D. Ill. Mar. 23, 2020).

Defendant Thomas provided Mustonen the Local Rule 56.2 Notice to Pro Se Litigant form. (Dkt. 45.) Unfortunately, Mustonen still failed to follow the appropriate procedure in responding to Defendant's summary judgment filings. Mustonen does not indicate where he admits or disputes individual listed facts in Thomas' Rule 56.1 statement. He also makes new allegations in his response to Thomas' summary judgment motion, but neither points to admissible evidence in the record nor provides his own separate statement of additional facts. (Dkt. 55.) Typically, with an interest to liberally construing filings by unrepresented parties, the Court might ignore Mustonen's error and simply view his opposition brief as a statement of additional facts. *See Morris*, 2020 WL 1330382, at *2.

The Court will not do so here, however, because a deeper problem undermines Mustonen's filing: namely, in it, he appears to have changed his story. "[T]he sham-affidavit rule" allows a court to disregard "an affidavit that contradicts [a] party's prior deposition or other sworn testimony" in a way that appears to be geared toward creating an issue of material fact sufficient to survive summary judgment. *James v. Hale*,

959 F.3d 307, 316 (7th Cir. 2020) (citing *Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018)). Here, in his deposition, Mustonen claimed that he began his federal lawsuit directly after his grievance was first dismissed and that he did not personally file any appeal with the Administrative Review Board at that time. (Dkt. 43-1 (hereinafter "Mustonen Dep.") at 30:18–31:7.) But in his opposition to Thomas' summary judgment motion (which argues that Mustonen's failure to appeal that first grievance dismissal within 30 days is fatal to his federal claim), Mustonen now claims that he appealed the grievance decision in a timely manner but did not receive a response. (Dkt. 55 ¶¶ 3–4.) He claims that it was only after this lawsuit began, and after waiting over a year without hearing anything from the prison's Administrative Review Board ("ARB"), that he sent them a second copy of the grievance to "check[]" on it, only for it to be denied as untimely. (*Id.*) It thus looks as though Mustonen simply changed his story to rectify the exhaustion problem Defendant pointed to in his summary judgment motion—a tactic prohibited by the sham-affidavit rule.[1]

Though this Court affords significant leeway to *pro se* litigants, the abovementioned problems with Mustonen's filing convinces the Court to ignore the factual allegations it contains. The Court thus treats Defendant Thomas' motion for summary judgment as a standalone document, relying principally on his statement of material facts, where supported, in recounting the case's record and in determining whether summary judgment is appropriate. Importantly, however, this does not mean the end of the case. *See Keeton v. Morningstar Inc.*, 667 F.3d 877, 880–81, 884 (7th Cir. 2012) ("[A] nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant." (quoting *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006))).

---

[1] Given that Mustonen appears to have relied on numerous other prisoners to help him draft pleadings while pursuing his claim, it is not particularly surprising that his filings are inconsistent. (*See* Mustonen Dep. at 14:23–15:2; 27:2–3; 30:22–23 (admitting he had "a lot of inmates help me out" with grievances, and that "another inmate" had helped him writing his lawsuit).

3

## II.      Factual Background

### A.      Grievance Procedure at Stateville

The grievance procedure at Stateville Correctional Center ("Stateville") spans several levels. Typically, prisoners first file a grievance with a counselor, who makes a preliminary decision; if the prisoner is dissatisfied with that decision, he can independently submit the grievance to a grievance officer for "second level review." (Dkt. 43-3 (hereinafter "McBee Decl.") ¶ 3.) Grievance officers are "tasked with responding to grievances from individuals in custody and making recommendations to the Chief Administrative Officer . . . regarding how to respond to those grievances." (*Id.* ¶ 2.) As to that second-level response, prisoners "may appeal any grievance they are not satisfied with, including if the grievance is determined to be moot." (McBee Decl. ¶ 6.)[2]  Apparently, "[w]hen individuals arrive at Stateville . . . they are provided with an orientation manual" that "explains the grievance process in detail," from "informal resolution with the counselor" all the way through "appeal to the Administrative Review Board." (*Id.* ¶ 7.)

Importantly, a prisoner may also file an emergency grievance. According to a declaration by Margaret Madole, the Chairperson of the ARB, a prisoner can submit an emergency grievance "directly to the prison's CAO" instead of a counselor, and "[i]f the CAO determines that an inmate's grievance does not constitute an emergency, the CAO shall return the grievance to the inmate noting that the grievance does not constitute an emergency, and instruct the inmate to re-file the grievance as a non-emergent grievance." (Dkt. 43-4 (hereinafter "Madole Decl.") ¶ 4 (citing 20 Ill. Admin. Code 504.840(c)).) Beyond this, the court was unable to find any information in the record about how (and whether) emergency grievances are handled differently than non-emergency grievances.

With this understanding of the grievance procedure in mind, the court turns to the facts of Mustonen's case.

---

[2] McBee does not cite to any specific document to support the contention that prisoners may appeal moot grievances. (*See id.*) Her affidavit, moreover, underscores the problem discussed later in this opinion, namely that an appeal of a "moot" grievance is unnecessary if the grievance is moot because the facility is addressing, or has addressed, the problem set forth in the grievance.

### B.     Mustonen's Grievance Process

On September 12, 2021, Mustonen, imprisoned at Stateville, had the encounter with Defendant Thomas undergirding the present litigation. (Dkt. 43 (hereinafter "DSOF") ¶¶ 1, 5.) According to his deposition testimony,[3] Mustonen was released from suicide watch that day, and, while being escorted by a corrections officer to the prison's segregation unit, Thomas "intercepted" and took Mustonen to a holding cell. (Mustonen Dep. at 18:1–6; 19:9–11; 19:21–24.) When Thomas took Mustonen's belongings, including his shoes, and refused to give them back, Mustonen requested to speak with a sergeant; instead, Thomas said, "I don't give a fuck" and took him, handcuffed, to his cell. (*Id.* at 18:8–21.) Once there, Mustonen asked for his shoes and Thomas responded by throwing Mustonen's underwear and T-shirts out of his cell and saying, "I gave you too much stuff already." (*Id.* at 20:16–21:2; 21:19–24.) Then, he pushed Mustonen to the floor and spent "at least a few minutes" punching him "about the face and body." (*Id.* at 18:21–19:1; 21:2–3.) When Mustonen yelled for help, Thomas "tried to stick [his] head in the toilet," at which point a Sergeant intervened and said, "That's enough." (*Id.* at 19:2–4.) Leaving the cell, Thomas threatened Mustonen by saying that he "wasn't going to eat or use the phone." (*Id.* at 23:22–24.) Accordingly, that night, Mustonen enlisted another prisoner to call his mother to tell her what happened. (*Id.* at 23:23–24:2.)

On the day of his alleged beating, Mustonen filed an emergency grievance. (Dkt. 43-2 (hereinafter "Grievance Records") at 1.)  The Court reproduces his grievance in full:

> On 9-12-2021 7-to-3-shift I came off watch going to Bwing 1 gally C/O D-Toamas took me to cell 109 and started hiting me over and over until the sgt, told him that's aungh, the, C/Os wont lave me alone could you please hlep me look at the cameras please, and [Thomas] sida every time he works I wont eat or use the phone and my body hurts, I'm in fear for my, life if C/O D-Toamas comes back to work on b-wing please look at the cameras on 9-12-2021 7 - in the morning to 3 - affnoon around 9:00.

(*Id.* at 1–2.) The counselor who first saw the emergency grievance appears to have sent it directly to an Assistant Warden. (*Id.*) On September 30th, Assistant Warden Williams determined that Mustonen's

---

[3] The facts of the underlying lawsuit are not at issue in the defendant's motion and are not addressed in the defendant's statement of facts. For context, the court sets forth here the defendant's deposition testimony concerning the incident.

grievance was indeed an emergency. (*Id.* at 3.) The CAO, David Gomez, signed the form and wrote "IA is addressing this now" and "AWP Williams . . . will respond in person and via email." (*Id.* at 1.)

Soon after, an IA officer came to Mustonen's cell and photographed his bruises.[4] (Mustonen Dep. at 24:5–6.) The head of Stateville's IA office interviewed Mustonen, as well as "other witnesses that . . . heard [him] yelling and stuff like that." (*Id.* at 16:9–12; 31:20–32:5.) Another IA officer also interviewed prisoners who had been in segregation with Mustonen on the day of the incident. (*Id.* at 16:3–8.) Beyond this, however, and critically, there is no information in the record as to what else, if anything, IA did to investigate Mustonen's claims, whether IA concluded its investigation, or what its findings were if the investigation was completed.

On November 22, 2021, Anna McBee, a grievance officer at Stateville, issued a second response to Mustonen's grievance. (*See id.* at 3.) She briefly recounted the abovementioned actions that officials had taken—including the ongoing IA investigation—and added that "per CHAMP entries, grievant was seen by the counselor several times right after 9/12/21 and grievant did not mention any issues with staff." (*Id.*) Reporting that Assistant Warden Williams indicated that "the issue was addressed," McBee concluded that: "Grievance is MOOT." (*Id.*) Within a week, Gomez signed the same form, concurring with McBee's account. (*Id.*; DSOF ¶¶ 7–9.)

The form contained, at the bottom, a box titled "Offender's Appeal to the Director," which allowed for appeal of the decision to the ARB in Springfield, Illinois. (DSOF ¶ 12.) Any appeal would have to be received within 30 days of the decision. (*Id.*)

Mustonen filed his complaint in this lawsuit on January 11, 2022. (Dkt. 1.) According to his deposition, he had started writing it soon after having received the November response to his grievance, noting that "I couldn't file the lawsuit without having the, the process of the grievance and stuff like that."

---

[4] Mustonen claims that IA was prompted to take this action when his sister called the prison and informed them that her "blood brother got beat up really bad by a correctional officer." (Mustonen Dep. at 24:2–6.) The Court need not resolve whether it was the sister's call or Mustonen's emergency grievance (or both) that caused IA officers to respond.

(Mustonen Dep. at 30:18–31:1.). And in 2023, with this federal litigation ongoing and "after Defendant indicated he would pursue a dispositive motion based on exhaustion," the ARB "received a grievance from Plaintiff on July 17, 2023," presumably attempting to appeal the November 2021 decision. (DSOF ¶ 16.) The ARB responded by noting that Mustonen's appeal was untimely. (*Id.* ¶ 17.)

Mustonen's deposition testimony suggests he was confused or misled by the grievance process at Stateville. When asked at his deposition whether he was "given instructions on how to file a grievance," Mustonen replied: "Not really. I had a lot of inmates help me out. They don't really discuss how to write a grievance." (Mustonen Dep. at 26:24–27:4.) Asked to specify whether the counselors "tell you who to give it to or how to file a grievance once you've written it," Mustonen replied: "I mean, yes. They, they said turn it – they turned it into a grievance box. They basically just turned it into a grievance box or a certain CO . . . would come in and collect the grievances or you could give it to the counselor." (Mustonen Dep. at 27:6–14.)

After the September incident, Mustonen explained, he had "asked the counselor or the staff to, to give me a grievance, and then I filled it out and I sent it in to -- I give it to the counselor, and then they, they, they, they stamp it and read it and then they view it right back on it. They tell me that they view it and get my copy back, and then they, they send it to the Springfield." (Mustonen Dep. at 26:17–23.) Mustonen's understanding of what had happened after filing his grievance concerning Thomas was thus as follows:

> Q. And did you send any grievance to the Administrative Review Board in Springfield?
>
> A. I sent it to the Chief Administrative Office . . . . I think they sent it to Springfield for me.
>
> Q. So after you had gotten it back from the grievance officer, you sent it to the chief administrative officer?
>
> A. Right.
>
> Q. And your understanding, after that, it would be sent to Springfield?
>
> A. Yes.

(*Id.* at 31:2–14.) Finally, when asked what he sought to get from this lawsuit, "in terms of either money damages or other relief," Mustonen responded that he only sought money damages. (*Id.* at 32:20–33:2.)

**DISCUSSION**

A court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law dictates which facts are material, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and the court must "construe the record in the light most favorable to the nonmovant" when deciding whether a genuine dispute of material facts exists. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) (citing *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009–10 (7th Cir. 1999)).

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust "such remedies as are available" before bringing an action concerning prison conditions. 42 U.S.C. § 1997e(a). Prisoners are thus required to "take advantage of all procedures that are actually available" before filing a lawsuit. *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 831 (7th Cir. 2020). Those procedures are dictated by the prison, such that "if a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim." *Ebmeyer v. Brock*, 11 F.4th 537, 541 (7th Cir. 2021) (quoting *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999)). Exhaustion is an affirmative defense, meaning that the defendant "bears the burden to show that remedies were available and that [the plaintiff] failed to use them." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016)).

Defendant argues that Mustonen's failure to check the appeal box on his grievance form warrants summary judgment because it shows he failed to exhaust the prison's available remedies. But for multiple, interrelated reasons, the Court finds that summary judgment is unwarranted. First, Mustonen's deposition testimony, which is not contradicted by the defendant's statement of facts (and, indeed, is set forth in the defendant's statement of facts) raises a triable issue as to whether he was fundamentally misled about the means and necessity of appealing the prison's November response to his grievance. And more broadly, Mustonen's confusion is shared by the Court: the actions the prison took in response to Mustonen's grievance fundamentally muddled the process, both as to what remedial act an appeal could even

8

accomplish and, by extension, whether an appeal was even necessary to exhaust. This made the process unavailable to Mustonen.

The exhaustion requirement "hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 578 U.S. at 642. Administrative remedies may be unavailable in multiple ways. For example, "remedies are available only if a prisoner has been notified of their existence." *Ramirez v. Young*, 906 F.3d 530, 535 (7th Cir. 2018). Additionally, availability requires the grievance procedures be "communicated in a way reasonably likely to be understood," such that "the district court should be able to point to evidence that the relevant administrative procedures were explained 'in terms intelligible to lay persons.'" *Id.* (citing *Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir. 2014)). This means that the process is unavailable when officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Smallwood v. Williams*, 59 F.4th 306, 320 (7th Cir. 2023) (quoting *Ross*, 578 U.S. at 644). And beyond nefarious actions, the grievance process is unavailable when an "official invites noncompliance with a procedure" by "mislead[ing] inmates about how to invoke the procedure." *Swisher v. Porter Cnty. Sheriff's Dep't*, 769 F.3d 553, 555 (7th Cir. 2014); *see also Davis v. Mason*, 881 F.3d 982, 986 (7th Cir. 2018) (reversing summary judgment on exhaustion in part because grievance coordinator's behavior "sent mixed signals about which course [the plaintiff] should take" regarding a grievance he sought to file).

In this case, Mustonen's deposition testimony raises a triable issue of fact as to whether the grievance process was available to him. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) (noting that "self-serving testimony, '[i]f based on personal knowledge or firsthand experience,' may prevent summary judgment against the non-moving party, as 'such testimony can be evidence of disputed material facts.'" (quoting *Berry v. Chi. Transit Authority*, 618 F.3d 688, 691 (7th Cir. 2010)). Specifically, Mustonen's deposition suggests that a counselor misled him as to whether and how he needed to appeal the decision to the ARB. Defendant Thomas states that, in addition to a manual, prisoners could "also ask their counselor for assistance or guidance with the grievance process." (DSOF ¶ 15.) In his deposition, Mustonen claimed he did just that: he "asked the counselor or the staff to, to give me a grievance, and . . . I give it to

9

the counselor, and then they, they, they, they stamp it and read it and then they view it right back on it. *They tell me that they view it and get my copy back, and then they, they send it to the Springfield.*" (Mustonen Dep. at 26:17–23 (emphasis added).) Accordingly, later, Mustonen agreed with Defendant's characterization in his statement of facts that Mustonen "underst[ood]," after getting the grievance back from the grievance officer and "sen[ding] it to the chief administrative officer," that "after that, it would be sent to Springfield." (*Id.* at 31:2–14.)[5]

Drawing inferences in non-movant Mustonen's favor, as is required, this evidence suggests that he sought out advice on what to do regarding his emergency grievance, and the counselor implied he did not need to appeal because any appeal would be handled for him by staff. Consistent with this, though the form he received included a box *allowing* him to appeal, nowhere on the form does the box claim it is the *only* means of appealing the decision. (*See* Grievance Records at 3.) The Court finds the Seventh Circuit's analysis in *Swisher* helpful: there, the plaintiff asked a supervisory officer at his jail "whether he should file a grievance" related to denial of medical care, and the officer told him "not to worry about it." 769 F.3d at 554. The plaintiff eventually met with the jail's Warden, who "promised to speak to the medical staff and 'take care of the problem,'" never suggesting that he file a grievance. *Id.* The Seventh Circuit found that

---

[5] Mustonen's confusion was perhaps understandable. While the defendant avers that every prisoner received a manual explaining the prison's grievance procedures, Mustonen implied the opposite, answering "[n]ot really" when asked whether he received "instructions on how to file a grievance." (Mustonen Dep. at 26:24–27:4.) The defendant has not provided evidence proving Mustonen's receipt of such a document; and even if Mustonen had received one, the defendant has not provided a copy as an exhibit to the summary judgment motion, which prevents the Court from determining whether such a manual addressed the appeals process for emergency grievances. Nor has the defendant provided information as to the interplay between emergency and non-emergency grievances, beyond the fact that emergency grievances skip a level of review. *See* 20 Ill. Admin. Code § 504.840. It is unclear, for example, whether different relief is available to prisoners who file emergency grievances, or whether an emergency grievance is deemed moot when the emergency is abated even if the precipitating problem has not been fully addressed. In the absence of further details, the specific procedures available to Mustonen—including whether appeals were possible outside the use of the form provided to him in November of 2021—are not adequately addressed by the defendant's motion.

the jail had created a "muddle" that "invite[d] noncompliance with a procedure" such that the plaintiff "can't be blamed for failing to invoke it." *Id.* at 555. Here too, Mustonen's deposition testimony implies that he was told, essentially, not to worry about appealing. Accordingly, assuming that Mustonen was required to appeal the November 2021 decision to exhaust administrative remedies, a dispute exists as to whether Mustonen was prevented from doing so through justifiable reliance on the representations of a prison official.

More broadly, it is not clear that the finding that his grievance was "moot" required Mustonen to appeal. Recall that prison officials agreed with Mustonen that his claim was an emergency and quickly sprang to action, commencing an IA investigation. (Grievance Records at 1, 3.) Recall as well that the record does not tell us whether the IA investigation remained ongoing when the prison noted that Mustonen's grievance was "moot." (*See id.* at 3.) If the investigation was ongoing, Mustonen could accomplish nothing by means of an appeal; so, too, had it been completed in a manner that mitigated Mustonen's concerns about further incidents with the defendant. Whether the IA investigation was ongoing or not when declared "moot," what relief could an appeal have provided? The defendant doesn't say.

The Seventh Circuit recently addressed a similar issue in *Hacker v. Dart*, 62 F.4th 1073 (7th Cir. 2023). There, a detainee at the Cook County Jail filed a grievance after an officer knocked him unconscious. *Id.* at 1079. The jail responded by issuing Hacker a written notice that they had referred his grievance "for investigation to the Office of Professional Responsibility and the Divisional Superintendent." *Id.* Attached to that notice was a form Hacker could use to appeal the referral decision, giving him 15 days to do so, and "includ[ing] standard language warning [him] that he had to appeal the prison's response to exhaust his remedies." *Id.* There was no "timeline" indicating when Hacker could expect a disposition of his grievance by the Office of Professional Responsibility. *Id.* Hacker had also been given an "Inmate Handbook" detailing the "general appeals requirement." *Id.*

The Seventh Circuit found the grievance procedure was unavailable to Hacker despite the explicit warning that he "had to appeal" within 15 days and the fact that the prison had provided Hacker a handbook. *Id.* at 1079–81. The court pointed out that "[w]ithout clear instruction, Hacker could not have known he

11

was supposed to appeal" the referral, since "[t]he referral did not indicate that OPR's involvement would lead to a negative disposition of the underlying grievance or rule out other remedial steps in the future." *Id.* at 1080–81. To the court, "the clear and sensible takeaway from the notice was that Hacker should stand by while OPR investigated his complaint," not appeal; put differently, "anyone receiving the notice of referral would have reacted by thinking the process was working and moving forward as it should—not by concluding there was anything to appeal." *Id.* at 1081.

To the extent that the IA investigation was ongoing when Mustonen's grievance was declared moot, a similar problem is presented here. Like Hacker, Mustonen received a grievance response indicating a specific team was investigating his complaint. Like Hacker, Mustonen may have understood that investigation to  have been ongoing, in which case the natural response would be to stand by while "the process was working and moving forward as it should." *See id.* Like Hacker, waiting for a disposition was not an option given the short deadline explicitly imposed on the appeal. And like Hacker, Mustonen apparently had access to a manual explaining grievance procedures—though Mustonen's deposition testimony impliedly disputes this and, in any case, it is unclear what that manual actually said. (*See* Mustonen Dep. at 26:24–27:4.)  Indeed, in at least one way, Mustonen's obligation to appeal was *less* clear than Hacker's; Mustonen filed an emergency grievance, and neither the appeal box at the bottom of the prison's response nor the relevant section of the Illinois Administrative Code indicated that appeal was *mandatory* to exhaust an emergency grievance. As in *Hacker*, "[t]his messaging 'so obscured the process that there was no conceivable next step for [Mustonen] to take.'" *Id.* (quoting *Reid*, 962 F.3d at 330).

Viewed in Mustonen's favor, moreover, the prison's response to his grievance also suggests that he *had*, in fact, exhausted by the time he filed this suit. The Seventh Circuit has rejected the idea that a plaintiff "must appeal grievances that were resolved as he requested and where money damages are not available [through the grievance process]." *Thornton v. Snyder*, 428 F.3d 690, 695 (7th Cir. 2005) (finding exhaustion where prisoner filed grievances asking to be moved to different cell and get a new mattress, was moved to different cell and given new mattress, and failed to appeal the grievances after prison called them moot). "In short, the . . . notion that [a plaintiff] should have appealed to higher channels after receiving the

relief he requested in his grievances is not only counter-intuitive, but it is not required by the PLRA." *Id.* at 697. Accordingly, courts in this circuit have suggested that a prison's dismissal of an emergency grievance as moot can be sufficient to exhaust administrative remedies without an appeal. *See, e.g., Daval v. Zahtz*, No. 3:19-CV-50147, 2021 WL 2072127, at *5 (N.D. Ill. May 24, 2021) ("[B]ecause Daval had received the relief requested and the grievance had been mooted, he had exhausted his administrative remedies without the need to do anything else"); *Dent v. Burrell*, No. 316CV01263NJRDGW, 2018 WL 968513, at *5 (S.D. Ill. Feb. 20, 2018) (finding no requirement that prisoner appeal grievance determined to be moot after plaintiff received the tooth removal he had asked for in the grievance); *Hildreth v. Butler*, No. 3:15-CV-831-NJR-DGW, 2017 WL 9531993, at *5–6 (S.D. Ill. May 18, 2017), *report and recommendation adopted*, No. 3:15-CV-831-NJR-DGW, 2017 WL 2609525 (S.D. Ill. June 16, 2017) (finding prison actions exhausted multiple of plaintiff's grievances such that appeal was not required, including prison affording him a typewriter in response to his request for "accommodation to address his inability to write legibly").

Viewed in the light most favorable to Mustonen, then, the evidence suggests that he received the relief he requested in his grievance. Mustonen asked the prison to "please hlep [sic] me look at the cameras please, and [Thomas] sida [sic] every time he works I wont eat or use the phone and my body hurts." (Grievance Records at 1.)  He repeated the request that someone "please look at the cameras" at the time he alleges the incident occurred. (*Id.* at 1–2.)  His grievance can fairly be read to request two things: 1) that an investigation into the beating occur; and 2) that something be done about the officer's threats. In turn, the prison's response suggests efforts to handle both: they commenced an IA investigation, whose officers sprang to action and photographed Mustonen's injuries and interviewed him and other witnesses; and the prison seems to have confirmed that Mustonen was not being denied phone or food, given that in the dismissal, McBee cryptically reported that a counselor saw Mustonen repeatedly in the days after the incident and he "did not mention any issues with staff." (*Id.* at 1, 3.)

At the very least, there remains ambiguity about what the prison did to respond to Mustonen's grievance—meaning that Defendant has not met his burden of proving a lack of exhaustion. The real

13

possibility that Mustonen received the relief he requested in his grievance, and thus did not need to appeal

the mootness decision to the ARB, further countenances against granting summary judgment for failure to

exhaust.

**CONCLUSION**

For the foregoing reasons, Defendant Thomas' motion for summary judgment is denied.


ENTER:


Dated:  June 20, 2024

_____
John J. Tharp, Jr.
United States District Judge